NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KEYANDIA C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.C., *Appellees*.

No. 1 CA-JV 21-0220
FILED 2-10-2022

Appeal from the Superior Court in Maricopa County
No. JD34449
The Honorable Christopher Whitten, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By James W. Rappaport
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge David B. Gass and Judge James B. Morse Jr. joined.

_____

**W I L L I A M S**, Judge:

¶1        Keyandia C. ("Mother") appeals the superior court's order terminating her parental rights to her child. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        This case is not the first time the Department of Child Safety ("DCS") intervened in Mother's care of her child, C.C. In 2017, the superior court adjudicated C.C. dependent based upon Mother's domestic violence, substance abuse, and untreated mental-health issues. After Mother's successful participation in services, the superior court dismissed the dependency and returned C.C. to her.

¶3        Three years later, in April 2020, Mother left C.C. in maternal grandmother's care and left the state. When grandmother was unable to continue caring for C.C., she notified Mother who refused to take the child. DCS took custody of C.C. and filed a dependency petition. Mother told DCS she was in California but planned to leave soon and did not know where she would live. She did, however, provide DCS with a P.O. Box address in Tempe and requested visitation. DCS referred her for supervised visits, but the referral eventually closed because of Mother's lack of contact. A few months later, the superior court adjudicated C.C. dependent.

¶4        In the months following C.C.'s removal, Mother moved frequently and maintained only sporadic contact with DCS. Without a physical address, DCS was unable to refer her for services. DCS referred Mother for drug testing, but she did not comply. DCS also tried to engage Mother by setting up in-person meetings, but after agreeing to them, Mother never appeared. DCS again referred Mother for supervised visits, but Mother did not participate.

¶5        Mother did not visit C.C. until December 2020. The two visits that month did not go well, and Mother still had not participated in substance-abuse testing or provided DCS with a physical address. Over the

next few months, Mother was incarcerated in Arizona on charges of disorderly conduct, assault, and trespassing. Meanwhile, the superior court changed the case plan to severance and adoption, and DCS moved to terminate Mother's parental rights based upon abandonment and nine months in an out-of-home placement. *See* A.R.S. § 8-533(B)(1), (B)(8)(a).

¶6        Mother was released from jail in March 2021, and then met with the case manager. As a result of that meeting, DCS referred her for substance-abuse testing and treatment, a psychological consultation, and visitation. The consulting psychologist recommended Mother participate in masters-level individual counseling. The DCS case manager testified Mother knew about the recommendation but indicated she did not need counseling.

¶7        By the termination hearing, Mother had regularly attended visitation after her release from jail but had completed only two drug tests and had not participated in any other services. The superior court terminated Mother's parental rights based upon abandonment and nine months in an out-of-home placement. Mother timely appealed. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶8        On appeal, Mother argues no reasonable evidence supports the superior court's finding that DCS made diligent efforts to provide her with appropriate reunification services under the nine-month out-of-home placement ground. *See* A.R.S. § 8-533(B)(8)(a). Because we affirm the termination order under the nine-month out-of-home placement ground, we need not address Mother's arguments regarding abandonment. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

¶9        Parents' right to custody and control of their own children, though fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). Termination of a parental relationship may be warranted if the state proves one statutory ground under A.R.S. § 8-533 by clear and convincing evidence. *Id.* at 248–49, ¶ 12. Clear and convincing means the grounds for termination are highly probable or reasonably certain. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005). The court must also find termination of the relationship to be in the child's best interest by a preponderance of the evidence. *Id.* at 285, ¶ 29.

¶10        This court "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and [this court] will

affirm a [termination] order unless it is clearly erroneous." *Jesus M.*, 203 Ariz. at 280, ¶ 4. This court does not reweigh the evidence, but "look[s] only to determine if there is evidence to sustain the [superior] court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶11** Before terminating a parent's rights under the nine-month out-of-home placement grounds, the superior court must find DCS made diligent efforts to provide the parent with appropriate reunification services. A.R.S. § 8-533(B)(8). DCS satisfies its diligent-efforts obligation if it provides the parent with "the time and opportunity to participate in programs designed to help [the parent] become an effective parent." *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). That means DCS must "identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances *as they arise throughout the time-in-care period*, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019).

**¶12** Although DCS must continue to make diligent efforts "during the entire time the [case plan is] reunification," *see Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96, ¶ 30 (App. 2009), it is not required to provide parents with unlimited time to "assume their responsibilities and take positive steps toward recovery," *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). Nor is it required to "provide every conceivable service" or to ensure that the parent participates in the services offered. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. at 353. And it need not undertake futile reunification efforts. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999).

**¶13** As an initial matter, DCS argues Mother waived her claim by not raising it before the termination hearing. Because Mother challenged DCS's efforts to provide services during the termination hearing, we decline to apply waiver here. *See Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 56 (2017) (waiver is discretionary); *cf. Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶¶ 17–18 (App. 2014) (applying waiver when parent failed to raise service issues during review hearings or at the time of the termination trial).

**¶14** Turning to the merits, Mother first contends DCS failed to take affirmative steps to locate her or assist her with housing. Mother, however, was neither missing nor unaware of the dependency. The DCS case manager contacted her immediately, and she returned his call just days

after DCS took custody of C.C. During that call, the case manager provided Mother with his contact information.

**¶15**     Once Mother had that information and knew C.C. was in foster care, she moved frequently, failed to keep in regular contact with the case manager, and never provided DCS with a physical address so it could refer her for services. Additionally, despite her frequent moves, as noted *supra* ¶ 4, the case manager set up in-person meetings with Mother, but Mother did not show up.

**¶16**     Mother knew she needed to establish stable housing. Yet, the record shows she took little initiative to remedy her instability and never indicated to DCS that she needed housing assistance, prompting the case manager to "assume," based upon his conversations with her, that she moved frequently by choice. Indeed, Mother testified that for the first half of the dependency, she "was out of town," because "random people and random guys would just talk to me and try to take me out of town," and she thought they would help her find a job.

**¶17**     Mother next argues DCS waited almost a year to refer her for substance-abuse testing and treatment. The record shows, however, that Mother's repeated moves and failure to remain in consistent contact with DCS hindered the case manager's ability to refer her for substance-abuse services. When Mother was referred for substance-abuse services, she resisted the initial treatment assessment, indicating she did not have substance-abuse issues. Mother did not begin to engage in the case until December 2020, when she had two visits with C.C.

**¶18**     Mother asserts that DCS should have referred her for substance-abuse services at that time. But, according to the case manager, Mother did not tell him that she was living in Arizona, nor did she provide him with her address so he could refer her for those services. Regardless, Mother was incarcerated over the next few months, hindering her ability to participate in DCS's referrals during that time. When Mother finally provided her location to DCS in March 2021, the case manager immediately referred her for substance-abuse services. She, however, only drug tested twice and never completed a substance-abuse assessment.

**¶19**     Mother next contends the case manager ignored her requests for a hair follicle drug test. The case manager testified that Mother indicated she did not want to complete a hair test, so to accommodate her, he set up urinalysis testing. Although Mother disputes this testimony, the resolution

5

of conflicting evidence "is uniquely the province of the [superior] court" to weigh and decide as the trier of fact. *Jesus M.*, 203 Ariz. at 282, ¶ 12.

**¶20** Finally, Mother argues DCS failed to provide her with mental-health services, such as a psychological evaluation and individual counseling, and should have completed a psychological consultation sooner. However, DCS agreed to refer Mother for mental-health services after she demonstrated thirty days' sobriety. The case manager testified that this requirement was needed to ensure an accurate psychological evaluation. Regardless, Mother did not provide her location to him so he could refer her for services until March 2021. Then, she participated in only a few urinalysis tests, and when DCS tried to implement individual counseling, she indicated she did not need it. Mother's refusal to engage in the case for the first ten months ultimately caused the delays she points to on appeal.

**¶21** On this record, reasonable evidence supports the superior court's finding that DCS made diligent efforts to provide Mother with appropriate reunification services and that Mother failed to remedy the circumstances the caused C.C. to be in an out-of-home placement.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA